Filed 9/23/24  Brown v. Dept. of Corrections and Rehabilitation CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TERESA BROWN, | C095798 |
| Plaintiff and Respondent, | (Super. Ct. No. 34201500176321CUOEGDS) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant and Appellant. | |

Plaintiff Teresa Brown is a Seventh-day Adventist who observes the Sabbath from sundown Friday through sundown Saturday.  Defendant California Department of Corrections and Rehabilitation (CDCR) found her ineligible for employment as a correctional officer based on her unwillingness to work during this time.  We previously remanded this matter for the trial court to determine, under Government Code section

1

12940, subdivision (*l*)(1),[1] whether CDCR had demonstrated that it explored any available reasonable alternative means of accommodating Brown's observance of Sabbath but is unable to do so without undue hardship.  On remand, the trial court found CDCR was unable to carry its burden and entered remedial orders and judgment in Brown's favor.

In this appeal, CDCR argues:  (1) the trial court misinterpreted our instructions on remand; and (2) the trial court erred by disregarding uncontroverted evidence that established no accommodation was possible without undue hardship.  We affirm the judgment.

## I.  BACKGROUND

A. *Factual Background*

Brown applied to be a correctional officer with CDCR in 2013.  At the time, CDCR operated more than 30 adult institutions, had a budget exceeding $10 billion, and employed about 35,000 to 40,000 correctional officers.

As part of the application process to become a correctional officer, Brown indicated a "[w]illingness to work weekend shifts (e.g., Saturday, Sunday, and/or Holidays) in emergency situations, on an as-needed basis, and/or on a regular rotating basis," a "[w]illingness to work required overtime," and a "willingness to work on-call hours as required."  On a separate form, she checked a box indicating she was not "freely willing to work split shifts, nights, weekends and holidays."  She submitted supplemental information to this answer explaining that, because of her faith, she could not work Friday after sunset or Saturday before sunset.  In a subsequent interview conducted by an investigator with CDCR's background investigation unit, Brown reiterated this limitation.

---

[1]  Undesignated statutory references are to the Government Code.

The investigator reported Brown's unwillingness to work from sundown Friday to sundown Saturday to her supervisor. The supervisor considered the State Personal Board's job description for a correctional officer, the memorandum of understanding between the California Correctional Peace Officers Association and the State (MOU), and CDCR's apprenticeship program before deciding to reject Brown's application based on her unwillingness "to work day, evening, or night shifts, weekends and holidays, and to report for duty at any time emergencies arise" as specified by the State Personnel Board.

CDCR sent Brown a letter explaining that due to her inability to meet this criteria, her name had been removed from the list of eligible candidates.

B. *Procedural Background*

Brown subsequently filed a complaint alleging two causes of action against CDCR under the California Fair Employment and Housing Act: (1) religious discrimination under section 12940, subdivision (a); and (2) failure to provide accommodation under section 12940, subdivision (*l*)(1). The first cause of action did not survive summary adjudication.

After a bench trial on Brown's second cause of action, the trial court found CDCR was entitled to judgment in its favor. In its statement of decision, the court explained that its ruling was based on the "bona fide occupational qualification" defense. Section 12940 provides, in relevant part: "It is an unlawful employment practice, unless based upon a *bona fide occupational qualification* . . . [¶] . . . [¶] (*l*)(1) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment . . . because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that

3

conflict with the person's religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship, as defined in subdivision (u) of Section 12926, on the conduct of the business of the employer or other entity covered by this part.  Religious belief or observance, as used in this section, includes, but is not limited to, observance of a Sabbath . . . ."  (Italics added.)

The court concluded:  "the Correctional Officer availability standards . . . constitute bona fide occupational qualifications for the Correctional Officer position."  The court explained:  "Correctional Officer availability standards" "describe in summary form the various published availability-for-work standards established by the State Personnel Board and CDCR."  The standards include "the willingness to work day, evening, swing or night shifts, weekends, (e.g., Saturday, Sunday, and/or Holidays); to report for duty at any time emergencies arise, to report for duty on an as-needed basis or for on-call hours as required, and/or to work required overtime as assigned."  The court determined Brown was required to establish that she could meet the availability standards, and her failure to do so was fatal to her remaining cause of action.

Additionally, the court noted Brown had otherwise established a prima facie claim, but the applicability of the bona fide occupational qualification defense eliminated any need to address whether CDCR met its burden under section 12940, subdivision (*l*)(1) to establish it initiated good faith efforts to accommodate her belief or that no accommodation was possible without producing undue hardship.

In an unpublished opinion, a different panel of this court concluded the trial court erred by deciding Brown's claim based on the bona fide occupational qualification defense contained in the prefatory part of section 12940.  This court reversed the judgment and remanded for the trial court to analyze the evidence under section 12940, subdivision (*l*)(1).

On remand, the parties submitted further briefing and the trial court read and analyzed the trial record. The record on appeal demonstrates that, at a hearing on September 17, 2021, the court "set forth its determinations and conclusions following remand, . . . as stated in the record, and determined thereupon that [Brown] was entitled to judgment for the reasons stated therein." CDCR did not designate a transcript of this hearing as part of the record on appeal. The minute order for the September 17, 2021 hearing states: "The Court ruled that the evidence did not prove that the requested accommodation would bring an undo [*sic*] hardship to the defendant and requested that counsel assist with the formulation of a remedial order."

On December 22, 2021, the trial court issued an "order on submitted matter" that addressed the structure and extent of the appropriate remedial orders Brown is entitled to following the court's determination that CDCR was unable to carry its burden to demonstrate that any available accommodation of her religious beliefs would pose undue hardship under section 12940, subdivision (*l*)(1). The court also entered judgment in favor of Brown.

CDCR submitted a timely appeal from the trial court's December 22, 2021 order and judgment.

## II. DISCUSSION

*A.      Adequacy of Record for Review*

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant must "provide an adequate record to assess error." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' " (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181,

187.)  With respect to the trial court's determination that CDCR did not carry its burden under section 12940, subdivision (*l*)(1), the record on appeal does not contain the trial court's full articulation of its reasoning.  Rather, CDCR cites the December 22, 2021 order on appropriate remedial orders that "recounts . . . *some* of the observations set forth at the September 17, 2021 hearing, as *detailed more* fully in the record of that hearing." (Italics added.)  Therefore, as a threshold matter, it does not appear CDCR can demonstrate error as to rulings made at the September 17, 2021 hearing, because we cannot fully assess the trial court's reasoning.  (See *Rhule v. WaveFront Technology, Inc*. (2017) 8 Cal.App.5th 1223, 1228-1229 & fn. 5 [succinct trial court rulings did not sufficiently capture trial court's reasoning; no reporter's transcript or agreed or settled statement of the proceedings at pertinent hearings were provided].)  Nonetheless, because the trial court did recount some of its observations in the record we do have, we will briefly address the arguments raised by CDCR in this appeal.

B.      *The Trial Court Correctly Interpreted Our Instructions on Remand*

CDCR argues the trial court misinterpreted our instructions on remand. Specifically, CDCR contends "[t]he trial court erred because it interpreted this Court's opinion as requiring it to disregard the crucial undisputed evidence that Brown would not remain at or report to work in an emergency, if it occurred on her Sabbath."[2]  CDCR has identified nothing in the record that permits us to conclude the trial court disregarded this evidence or that the evidence has any bearing on the court's conclusion that CDCR did not meet its burden.  CDCR's argument relies upon a portion of the trial court's December 22, 2021 order that responded to CDCR's assertion that it is not required to

---

[2]  Brown introduced evidence that she would work during her Sabbath in certain emergency situations including a riot, a life being at stake, or an injury.  CDCR's point is Brown did not agree to stay at work or be called in for any situation CDCR deems an emergency.

accommodate an applicant who cannot or will not perform the essential functions of the position. As part of its response, the trial court explained this court's prior opinion "explicitly states that 'the evidence demonstrates CDCR employs correctional officers who are at times unavailable *or unwilling* to work' [citation]. This finding functionally eliminated the factual basis upon which this Court distinguished Plaintiff from other members of her faith that have been successfully employed at CDCR." The trial court then further expanded in a footnote: "Plaintiff clearly introduced evidence that Defendant tolerated *unavailability* in a variety of contexts. At the same time, this Court's analysis of the trial evidence was that CDCR had *never*, at any time in the past, extended employment to a person who was *unwilling* to report in the event of an emergency. This was the very basis for the distinction between plaintiff and other members of her faith who had been employed at CDCR. [Citation.] Nevertheless, a proper respect for the structure of our judicial system requires a clear recognition that this Court is bound by the findings of the Appellate Court." It is not clear from the record why these statements by the trial court are necessary or how they are responsive to CDCR's assertion that it is not required to accommodate an applicant who cannot or will not perform the essential functions of the position. It is possible the trial court was attempting to explain its earlier application of the bona fide occupational qualification defense to this case. As our prior opinion explained, " '[B]ona fide occupational qualification' is a term of art with a distinct meaning" from occupational qualifications. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 975, fn. 10.) Even if the defense could apply to a facial neutral policy, it was not supported by the evidence. Nothing in the trial court's comments conflict with this court's statement that "the evidence demonstrates CDCR employs correctional officers who are *at times* unavailable *or* unwilling to work." (Italics added.) Nor does this court's statement conflict with the idea that Brown could be unique for stating before she was employed that she would not work during her Sabbath even if called in to respond to an emergency. The trial court ultimately reached the correct

conclusion when it stated: "[I]t seems clear that the Appellate Court intended that accommodation inquiry must be made even where the job requirement at issue effectuated an essential function." CDCR may not avoid its burden under section 12940, subdivision (*l*)(1) by asserting that willingness to work during any emergencies or at any time is an essential function of the correctional officer position. Section 12940, subdivision (a)(1) provides that an employer can refuse to hire individuals with physical or mental disabilities who are unable to perform "essential duties" even with reasonable accommodations, but there is no equivalent language in subdivision (*l*)(1) regarding religious observances. CDCR's reliance on the "essential duties" concept and authorities applying it are inapt. (E.g., *Furtado v. State Personnel Bd*. (2013) 212 Cal.App.4th 729, 743 [alleged disability discrimination]; *Quinn v. City of Los Angeles* (2000) 84 Cal.App.4th 472, 475 [same].) Under section 12940, subdivision (*l*)(1), "[o]nce the employee establishes a prima facie case, then the employer must establish it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship." (*Soldinger v. Northwest Airlines, Inc*. (1996) 51 Cal.App.4th 345, 370.) Because the trial court had already determined Brown established a prima facie case, the question on remand was whether CDCR could meet its burden under section 12940, subdivision (*l*)(1). We turn now to that question.

C.     *The Trial Court's Determination that CDCR Did Not Meet Its Burden*

Under section 12940, subdivision (*l*)(1), CDCR had the burden to demonstrate it "has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship, as defined in subdivision (u) of Section 12926, on the conduct of the business of the employer . . . ." "The reasonableness of the employer's efforts to accommodate is determined on a case

8

by case basis." (*Soldinger v. Northwest Airlines, Inc., supra*, 51 Cal.App.4th at p. 370.) "If the employee proves a prima facie case and the employer fails to initiate an accommodation for the religious practices, the burden is then on the employer to prove it will incur an undue hardship if it accommodates that belief." (*Id*. at p. 371.) Section 12926, subdivision (u) defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of the following factors:  [¶] (1)  The nature and cost of the accommodation needed.  [¶] (2)  The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility.  [¶]  (3)  The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities.  [¶]  (4)  The type of operations, including the composition, structure, and functions of the workforce of the entity.  [¶] (5)  The geographic separateness or administrative or fiscal relationship of the facility or facilities."

" 'Although the state and federal antidiscrimination legislation "differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of the state statute." ' " (*Soldinger v. Northwest Airlines, Inc., supra*, 51 Cal.App.4th at p. 367, fn. 9.)  The United States Supreme Court recently explained that, under Title VII of the Civil Rights Act of 1964, " 'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." (*Groff v. DeJoy* (2023) 600 U.S. 447, 468.)  Many lower courts, including in many authorities relied upon by Brown, had previously interpreted "undue hardship" to mean any effort or cost that is more than de minimis.  (*Id*. at p. 454.)

The record before us indicates the trial court based its determination that CDCR did not meet its burden at least in part on its finding that "no particularized inquiry regarding the actual extent of any accommodation required by [Brown] was undertaken;

9

the 'interactive process' did not proceed here." Further, the trial court indicated Brown's evidence "established that some unavailability was routinely accommodated, in a variety of settings and using a variety of modalities. These included the institutional use of management directed positions, and the employee's preliminary use of shift swaps, parental leave and holiday time off etc. so that the extent of any required *remaining* accommodation could be quantified." The trial court explained that because Brown's application was rejected at the outset, no in-depth consideration of her unique circumstances occurred, and the extent of any required accommodation could not be quantified, "and therefore it could not be determined whether such required accommodation might or would interfere with [CDCR's] business operations or involve undue hardship." (Fn. omitted.) These conclusions are supported by the evidence and none of CDCR's arguments sufficiently address the trial court's concerns.

CDCR contends Brown did not provide substantial evidence controverting CDCR's showing of undue hardship. This argument misunderstands the parties' relative burdens and the standard of review on appeal. "Where, as here, an employer fails to meet its burden of proving undue hardship, the question on appeal is ' "whether the evidence compels a finding in favor of the appellant as a matter of law." ' [Citation.] Specifically, the question is whether the [defendant]'s evidence of financial burden was (1) ' " 'uncontradicted and unimpeached' " ' and (2) ' " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citations.] In fact, '[w]here, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in [its] favor.' " (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.) CDCR has failed to meet this burden.

There was evidence that CDCR did not explore potential ways that Brown could have been hired while allowing her to observe the Sabbath. The supervisor testified that, at the time Brown was rejected, there was no way to look into the availability of a

10

management directed position that did not work during the Sabbath. He also did not know the amount of involuntary overtime and emergencies occurring at different institutions. Brown's expert on policies, procedures, and accommodations based on religion at CDCR testified that some prisons never use involuntary overtime. Additionally, the expert testified correctional officers are not held on the job if they are going on their days off or are on their days off. Furthermore, the court heard evidence regarding how other individuals who observe the Sabbath had been accommodated. The evidence simply did not foreclose the possibility that Brown could have been accommodated at a facility somewhere.

CDCR argues "the undisputed fact that Brown would not work on her Sabbath, even in an emergency, established an undue hardship." Relatedly, CDCR argues it demonstrated "the safety issues associated with Brown's unwillingness to work during her Sabbath constitute undue hardship." CDCR's citations to the record do not fully support its assertions let alone establish the evidence compelled a finding in its favor. The record indicates the unavailability of other individuals has been accommodated even for emergencies without creating safety issues. Brown's expert testified that rarely if ever does CDCR call in off-duty officers other than those who are part of an emergency response team or investigative unit.

CDCR argues it demonstrated that accommodating Brown's unavailability would amount to preferential treatment over other officers and violate the MOU. CDCR's citations to the record do not support its assertions, let alone establish that the evidence compelled a finding in its favor. CDCR cites nothing in the MOU nor any testimony that demonstrates the MOU prohibits the shift swaps proposed by Brown. Additionally, each facility has approximately 70 percent bid positions and 30 percent management directed positions. Bid positions are awarded by seniority, but management directed positions are awarded at the discretion of management without violating the MOU. Other individuals

who observe a Sabbath have been accommodated with management directed positions and are not called in on Sabbath for emergencies.

CDCR argues accommodating Brown's unavailability would be detrimental to officer morale. Yet again, CDCR's citations to the record do not fully support its assertions let alone establish the evidence compelled a finding in its favor. Further, there is evidence in the record indicating that similar accommodations have been made without impacting morale. Additionally, only " 'coworker impacts' that go on to 'affec[t] the conduct of the business' " are relevant. (*Groff v. DeJoy, supra*, 600 U.S. at p. 472.) "[A] hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered 'undue.' If bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself." (*Ibid*.)

CDCR argues accommodating Brown's unavailability would "interfere" with CDCR's apprenticeship program but its citations to the record do not establish this fact. Indeed, another Sabbath observer was accommodated in the apprenticeship program.

CDCR demonstrates no basis to disturb the trial court's conclusion that CDCR failed to meet its burden under section 12940, subdivision (*l*)(1) to demonstrate that any available accommodation of Brown's religious beliefs would pose undue hardship.

## III.  DISPOSITION

The judgment is affirmed.  Teresa Brown shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

EARL, P. J.

/S/

_____

ROBIE, J.